IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jason Alan Hertzog, ) | |
| ) | Civil Action No. 8:05-944-MBS-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Horry County; Tom Fox, Director, Horry, ) | |
| County Detention Center; and Debbie ) | |
| Hipp, LPN, Horry County Detention ) | |
| Center, ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02 (B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on March 30, 2005, seeking damages for alleged civil rights violations. Named as defendants were Horry County; Tom Fox, the Director of the Horry County Detention Center[1] ("Detention Center"); and Debbie Hipp, a nurse at the detention center. On June 20, 2005, defendants Horry County and Fox filed a motion for summary judgment. By order filed July 1, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On August 2, 2005, the plaintiff filed his response to the motion. On October 17, 2005, defendant Hipp filed

---

[1] The official name of the detention center in Horry County is J. Reuben Long Detention Center (Fox aff. at ¶ 1).

a separate motion for summary judgment. By order filed October 18, 2005, pursuant to *Roseboro*, the plaintiff was again advised of the summary judgment dismissal procedure. On November 15, 2005, the plaintiff filed a response to the motion.

## FACTS PRESENTED

The plaintiff is currently an inmate at Kirkland Correctional Institution in Columbia, South Carolina. This lawsuit contains claims stemming from the plaintiff's time at the Long Detention Center, where the plaintiff was held as a pretrial detainee. The plaintiff alleges that he suffered from complications from Crohn's disease and that he received inadequate medical care while he was incarcerated at the detention center. The plaintiff also alleges that he spoke with defendant Fox "about these issues and he stated things would be taken care of. As of this date of inquiry, no action was taken." (comp. at 3).

## APPLICABLE LAW

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

2

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Cooper v. Dyke,* 814 F.2d 941, 948 (4th Cir. 1987). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53).

Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was

3

excessive in relation to that purpose. *Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

The plaintiff contends that the defendant was negligent in "failing to render timely health care". Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).[2] The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), *cert. denied*, *Grayson v. Royer*, 529 U.S. 1067 (2000).

## ANALYSIS

**DEFENDANT HIPP'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff alleges that he was denied medical attention and treatment for his medical condition, Crohn's disease. In his complaint, the plaintiff alleges that he started having "severe symptoms" on August 23, 2004 and that despite repeated requests for medical attention, he received no treatment. The medical records attached to Ms. Hipp's affidavit tell

---

[2] As discussed above, while pretrial detainees are afforded the protection of the Fourteenth Amendment rather than the Eighth Amendment, the deliberate indifference analysis is the same for both inmates and pretrial detainees. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

4

a different story, however.  It appears that the plaintiff was seen on a regular basis by physicians and nurses at the detention center, beginning on July 22, 2004, the day the plaintiff was first admitted to the facility.  The physician orders in the record show that the plaintiff was seen by medical staff, at the very least, on the following dates in 2004:  July 22, 23, and 26; August 2, 18, 23, 24, 28, and 30; September 2, 3, and 30; October 4, 21, and 29; November 3, 8, 11, 16, and 17.  In 2005, the plaintiff was seen, at the least, on January 21; February 15, 17, 18, and 24; April 18, 26, 27, and 28.

A claim of deliberate indifference to serious medical needs requires a greater showing than made here.  The plaintiff quite simply has not shown that the defendant Hipp was indifferent to his medical needs. In fact, the medical records show that the plaintiff's condition was closely monitored by Ms. Hipp and other prison medical staff.  As such, the plaintiff's claims are merely bald allegations which are insufficient to survive summary judgment.  *See White v. Boyle*, 538 F.2d 1077 (4th Cir. 1976)(conclusory allegations are insufficient to avoid summary judgment).

If anything, the plaintiff has raised allegations of medical malpractice.  Section 1983 provides a remedy for violations or deprivations of rights secured by the Constitution or other laws of the United States, not ordinary state torts.  *See Maine v. Thiboutot*, 448 U.S. 1 (1980); *Tucker v. Duncan*, 499 F.2d 963 (4th Cir. 1974)(section 1983 is not a federal remedy for ordinary state tort claims).  To the extent that the plaintiff is attempting to bring a state law negligence claim, because it is recommended that the §1983 claims fail, the court should decline to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c).

Defendant Hipp has also raised the defense of qualified immunity, which requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right."  *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).  Because

5

there is no evidence of any specific right of the plaintiff which was violated, it is unnecessary for this court to address the qualified immunity defense. *See Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998)(where the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

**DEFENDANTS FOX AND HORRY COUNTY'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff has also alleged a claim against Mr. Fox, the detention center director, and Horry County. The plaintiff alleges that he spoke to the defendant Fox about the alleged medical indifference by the prison medical staff, and specifically by defendant Hipp.

As discussed above, the plaintiff here has failed to put forward any evidence that defendant Hipp was deliberately indifferent to his medical needs. The plaintiff alleges that he spoke to the defendant Fox about the situation and that Director Fox "stated things would be taken care of." (comp. at 3). There is no other allegation that the defendant Fox was involved in the plaintiff's medical care.

As the defendants note, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978). A supervisor may be held liable for the constitutional violations committed by his subordinates, but only if the plaintiff can show that the supervisor tacitly authorized, or was deliberately indifferent to, the subordinates' actions. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). Supervisory liability for constitutional injuries is not imposed on a *respondeat superior* basis absent an official policy or custom which results in illegal action. *Fisher v. Washington Metro Area Transit Authority*, 690 F.2d 1133, 1142-43 (4th Cir. 1982). In order to hold a supervisor liable for a constitutional injury, a plaintiff must establish three elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and

6

(3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw*, 13 F.3d at 799. A plaintiff must generally produce evidence that the conduct complained of is prevalent or had been repeated on several occasions, and that the supervisor had refused to act "in the face of documented widespread abuse." *Id*. (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). The plaintiff here has simply not met this burden.

While the plaintiff has made an allegation as to personal knowledge and involvement by Director Fox, and Mr. Fox acknowledges that he did in fact speak with the plaintiff about his concerns, there is no evidence that any of the defendants were indifferent to the plaintiff's medical needs. Put another way, there is no evidence that a constitutional injury occurred, a prerequisite to supervisory liability claims. Defendant Fox states in his affidavit that after speaking with the plaintiff, he reviewed the plaintiff's medical records and found that the plaintiff had been receiving ongoing care for his condition. Accordingly, there can be no liability on a *respondeat superior* basis.

To the extent that the plaintiff's complaint can be perceived to state additional claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims. *See* 28 U.S.C. §1367(c).

The defendant Fox also argues that he is entitled to qualified immunity. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

7

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).  Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609.  If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendant violated any of his constitutional rights.  Therefore,  defendant Fox is entitled to qualified immunity on these claims.

The plaintiff has also named Horry County as a party in this matter.  In order to state a claim for damages under 42 U.S.C. § 1983, an aggrieved party must sufficiently alleged that he was injured by "the deprivation of any [of his] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law."  While a county may be considered a "person" within the meaning of § 1983, in order to state a claim against a municipality or county under § 1983, the plaintiff must "identify a municipal 'policy' or 'custom' that caused plaintiff's injury." *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997)(county or other municipality may have 1983 liability if a "policy" of discrimination is shown); *see Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 694 (1978) (municipalities are liable under § 1983 only for "violations of federal law that occur pursuant to official governmental policy or custom).  The plaintiff has put

8

forward no evidence of any such county policy or custom. Accordingly, as to Horry County, summary judgment is appropriate.

Finally, to the extent that the plaintiff is asserting a procedural due process claim with regard to the grievance procedure at the detention center, this claim also must fail. The plaintiff alleges that he filed grievances concerning the deprivation of his rights, as well as other complaints that have not been answered. Moreover, prisoners have no constitutional right to a grievance procedure. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995). A grievance procedure does not give rise to a protected liberty interest requiring protection under the Fourteenth Amendment. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the motion for summary judgment of defendant Debbie Hipp be granted. This court further recommends that the motion for summary judgment of defendants Horry County and Tom Fox be granted.

IT IS SO RECOMMENDED.

s/ Bruce H. Hendricks
United States Magistrate Judge

January 17, 2006
Greenville, South Carolina